COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

April 19, 2017

Aaron C. Baker, Esquire
Baird Mandalas Brockstedt, LLC
6 South State Street
Dover, DE 19901

Gary R. Dodge, Esquire
Curley Dodge & Funk, LLC
250 Beiser Boulevard, Sutie 202
Dover, DE 19904

RE:   *Charles F. Alexander v. Edwin J. Alexander, Edward L. Alexander, and William F. Alexander*
      C.A. No. 12587-MA

Dear Counsel:

Pending before me is a motion for judgment on the pleadings filed by Petitioner Charles F. Alexander ("Charles") in this Verified Petition to Demand Accounting and Distribution of Revocable Trust.[1]  For the reasons that follow, I recommend that it be granted in part and denied in part.

Petitioner is one of four beneficiaries and Co-Trustees of the Revocable Trust Agreement of Irvan Fletcher Alexander and Helen Marie Alexander ("the

---

[1] I use first names only to avoid repetition or confusion, and intend no disrespect by this practice.

Trust Agreement" or "the Trust") that was settled by Petitioner's parents ("the Grantors"). The other beneficiaries and Co-Trustees are Petitioner's three brothers, Respondents Edwin J. Alexander ("Edwin"), Edward L. Alexander ("Edward"), and William F. Alexander ("William"). The Trust Agreement was executed by the Grantors and Co-Trustees on March 14, 2007.[2] Sometime thereafter, Helen passed away. On April 11, 2012, Irvan died. According to Charles's petition, his brothers have failed to keep him informed as to the Trust's accounting and activity since early 2012, and have refused him access to materials that would enable Charles to value the Trust. Petitioner is now seeking an accounting of all Trust activity from January 1, 2012 to the present, an immediate distribution of the Trust *res,* and an award of attorney's fees and costs.

The record shows that the Verified Petition was filed on July 22, 2016.[3] The Sheriff's returns, filed on August 11, 2016, indicate that Edwin, Edward, and William were personally served at their respective residences in Kent County on August 3, 2016.[4] On August 30th, Charles moved for entry of a default judgment.[5] He withdrew his motion, however, after Respondents filed their Answer and their response to the default judgment motion on September 6, 2016.[6] In their Answer,

---

[2] Motion for Judgment on the Pleadings, Ex. A. Docket Item ("DI") 10.
[3] DI 1.
[4] DI 3. Motion for Judgment on the Pleadings, Exs. B, C, and D. DI 10.
[5] DI 4.
[6] DI 5-6, 8.

Respondents do not dispute that Charles is entitled to an accounting nor do they object to a final distribution of the trust assets. However, they allege as an affirmative defense that Edward and William were not personally served with copies of the summons and complaint and, therefore, service of process was defective as to these two Respondents.

Thereafter, on November 28, 2016, Charles moved for judgment on the pleadings,[7] arguing that Respondents admitted or conceded in their Answer that he is entitled to the relief he requested in the Verified Petition. In this motion, Charles also argues that Respondents were properly served, citing the Sheriff's returns as "'prima facie proof of proper service.'"[8] In response, Respondents argue that Charles's motion is premature, and only Edwin was served by the Sheriff's office, but not personally since Edwin's son accepted service of process at his home in his absence. Respondents argue that Edward and William were never served, and have attached several affidavits to that effect, including the affidavit of Nicholas Guittari, Chief Deputy Sheriff for Kent County, who averred that on August 3, 2016, he had delivered copies of the Summons and Complaint to Edwin's son, who accepted service in his father's absence, but that he had not served Edward or William at their residences on August 3rd or on any other date.

---

[7] Ct.Ch.R. 12(c).
[8] Motion for Judgment on the Pleadings, at 5 (quoting *Alston v. Dipasquale*, 2001 WL 34083824, at 1 (Del. Super. Oct. 19, 2001)).

Respondents also oppose the motion for judgment on the pleadings on the ground that it is unnecessary, dilatory, and wasteful of judicial resources. Respondents state that: (1) they are in the process of supplying Charles with complete records of all activity in the Trust bank account as the records become available; (2) they made a recent offer of $215,000 to purchase Charles's interest in the Trust's real property; and (3) they had agreed to make $5,000 distributions from the crop income at the end of December 2016. Respondents contend that they have made good faith attempts to come to a mutually satisfactory resolution with Charles who, they claim, has chosen instead to escalate the dispute with the current motion rather than compromise.

According to the Trust Agreement, the Trust was to be distributed in equal shares to Grantors' surviving children following the Grantors' death.[9] Five years have passed since the death of the last surviving Grantor. Five years is more than enough time to wind up a trust. Based on the record before me, I recommend that a judgment on the pleadings be approved in part as to Edwin since Edwin has conceded that he was properly served. Therefore, I recommend that the Court issue an order requiring Edwin to provide an accounting of the assets of the Trust since January 1, 2012 and, after the accounting, to distribute the Trust assets in equal shares to the parties. I also recommend that the Court award Charles's

---

[9] Motion for Judgment on the Pleadings, Ex. A at Sec. 1(B).

reasonable attorneys' fees be paid from the Trust since his litigation has conferred a benefit to the Trust by breaking the apparent deadlock among the Co-Trustees which was impeding the proper administration of the Trust and its timely termination.[10]

Finally, if the Court has to decide whether service of process was, in fact, defective as to Edward and William, this litigation will be prolonged unnecessarily and will be wasteful of judicial resources. Furthermore, it would be an exercise in futility since all Charles would have to do is re-serve Edward and William and re-file his motion for judgment on the pleadings. Therefore, I urge the parties to put aside their differences and work together to wind up the Trust and distribute the Trust assets.

To eliminate any further delay, I am waiving the issuance of a draft report. I refer the parties to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[10] *See* 12 *Del. C.* § 3584. *See also IMO Trust for Grandchildren of Gore,* 2013 WL 771900, at *3 (Del. Ch. Feb. 27, 2013).